Wolfe Unemployment Compensation Case.
Seley, Appellant, *v.* Unemployment Compensation
Board of Review.

Argued November 13, 1957. Before RHODES, P. J.,
HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WAT-
KINS, JJ.

*Kenneth W. Rice,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with
him *Thomas D. McBride,* Attorney General, for appel-
lee.

Opinion by Watkins, J., January 21, 1958:

This unemployment compensation appeal is from a decision of the Unemployment Compensation Board of Review holding that the appellee claimant was not engaged in agricultural labor but was in covered employment under the provisions of the Unemployment Compensation Law.

The Bureau of Employment Security had ruled that the appellee was ineligible for benefits. On appeal, the referee affirmed the decision of the bureau. The board, on appeal, remanded the case to the referee for further hearing, following which, the board made its own findings of fact and reversed the referee, holding that the appellee was entitled to compensation.

The appellee claimant was employed by Seley Farms. The farm consisted of approximately 1000 acres. Part of the farm was cultivated, but income wise, was principally used as a game and hunting preserve. Pheasants were raised on the farm for hunting purposes. Approximately 6300 birds were raised in 1955 and in addition some 3800 birds were purchased elsewhere to supply the demand. Hunters were permitted to hunt pheasants for a fee of $20 per day. The approximate income from the sale of farm products was between Fifteen Hundred ($1500) to Two Thousand ($2000) Dollars. The income from the pheasant hunting enterprise was approximately Twenty Thousand ($20,000) Dollars. The owner had a state license for the preserve.

The appellee was paid One Hundred Fifty ($150) Dollars per month and was furnished with living accommodations, light and heat. His duties consisted in feeding and watering the pheasants, taking care of the eggs and hatching, feeding and caring for the dogs, releasing and spotting the birds as needed for hunting.

The question involved is a simple one, the answer difficult, because of confusion created in the interpretation of the definition of farm or agricultural labor under the various federal and state social security acts. Was this appellee engaged in agricultural labor and thus excluded from coverage under the provisions of the Unemployment Compensation Law? Section 4 (L) (4) (1) of the Unemployment Compensation Law of 1936, P. L. 2897, art. 1, Section 4, as amended, 43 PS §753, excludes from the definition of employment, "agricultural labor" which includes all services performed "(a) on a farm in the employ of any person in connection with . . . raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wild life".

There are no decisions which rule the instant case. The cases in the federal and state courts, where the question of agricultural labor has been decided, seem to depend upon the facts of each particular case, and, of course, the wording of the statute being interpreted. It is difficult to find a pattern of uniform interpretation.

Here, there is no question that the place where the appellee was employed is a farm and the evidence clearly establishes that fact. He was working on a farm in connection with the raising, feeding and caring for pheasants. Unlike many of the State Acts that have been interpreted, the words of the Pennsylvania Unemployment Compensation Law, as to agricultural labor, are clear, and free from all ambiguity. Do pheasants fall within the wording of the statute as either wild life or poultry? If they do, then the clear language of the statute designates his duties to be agricultural labor.

The appellant points out that Webster's International Unabridged Dictionary, Second Edition, defines poultry to be, "any domesticated birds which serve as a source of food, either eggs or meat. In order of their importance to man, poultry includes chickens, turkeys, ducks, geese, guinea fowl, pigeons and pheasants." The Pennsylvania Act, in so many words, has defined the raising, feeding and caring for poultry or wild life as agricultural labor and certainly pheasants fall clearly within one or the other designation.

The board has taken the position that the pheasants which the appellee raised and cared for were used to populate a game preserve and were not used for agricultural purposes. There is no question but that the pheasants were not raised for the usual purpose that poultry is raised on a farm, but for the purpose of stocking a hunting and game preserve.

However, if the appellee were employed on a farm, raising pheasants for sale in the market and some or all were purchased for the game and hunting preserve business, it seems clear, under the Pennsylvania Act, that he would then be engaged in agricultural labor. Also, if he were engaged in raising, feeding, and caring for pigeons which in turn were sold by the farmer for trap shooting purposes, it seems to follow that the language of the statute clearly designates his duties as agricultural labor. Certainly it cannot be successfully contended that the character of the appellee's services would be changed if the fowl were shot before being taken home rather than being purchased in the open market already killed and cleaned.

"In determining whether specific employers or employees are included within the agricultural exemption under the social security acts, the wording of the applicable statutory definition of the term 'agricultural labor' is, of course, of primary importance." 53 A.L.R.

2d 410. In the Pennsylvania Act the definition is clear, if pheasants fall within the designation of poultry or wild life.

We feel there is merit in the appellant's position that in this case it is the nature of the work that the appellee was performing and not the uses to which the product of his labor were put, which determined his status.

Several cases in other jurisdictions seem to follow this thinking. In *H. J. Heinz Co., a Corp., v. Marie C. Chavez, Widow et al.*, No. 29522 Supreme Court of Indiana, decided February 28, 1957, 140 N.E. 2d 500, the appellee had been hired by the Heinz Co., a canning and food stuffs company, for the purpose of helping harvest a cucumber crop on a farm not owned by Heinz Co. Claimant was killed in a collision with a train while driving his truck to work, under circumstances which would have entitled his widow and family to workmen's compensation, provided he was not engaged in agricultural work at the time of his death. The Superior Court of Indiana held him to be an agricultural worker, even though the business of the employer was not agricultural in character. This case held that whether a worker is or is not a farm employee must be determined from the character of the work he is required to perform and not from the general occupation or business of his employer.

The appellee was employed on a farm and his duties were agricultural in character, and if the pheasants were sold in the open market for food, as other poultry, this question would not be before us. We do not believe that the fact that the appellant decided to increase his income by using the pheasants to stock a hunting preserve and sell them to shooting customers changes the character of his employment.

We agree with the appellant that the finding of fact by the board that the appellee acted as a guide and dog handler for hunters is not supported by the evidence. Perhaps by a stretch of the imagination such an inference could be drawn. However, even permitting this finding of fact to stand, if the appellee did handle the dogs during hunting, and guide hunters, this standing alone and representing such a small part of his duties, would not be sufficient to change the character of his duties from agricultural labor.

We conclude that the duties of this employee fall within the agricultural labor exception to the Unemployment Compensation Law and he is not entitled to benefits.

Decision of the Unemployment Compensation Board of Review is reversed.

RHODES, P. J., and GUNTHER and WRIGHT, JJ., would affirm on the findings of fact made by the Board.