Lubold Unemployment Compensation Case.

Argued December 16, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Bruce C. Adams,* for appellant.

*Sydney Reuben,* Assistant Attorney General, for Unemployment Compensation Board of Review, appellee.

*James C. Robertson, Jack A. Riggs, Samuel A. Schreckengaust, Jr.,* and *McNees, Wallace & Nurick,* for intervening appellee.

OPINION BY WATKINS, J., March 18, 1965:

This is an appeal in an unemployment compensation case by the claimant, Clair Lubold, from a decision of the Unemployment Compensation Board of Review, denying him benefits on the ground that he was an agricultural worker.

The claimant in this case was a regular employee of the Nursery Division of the Hershey Estates and was laid off on November 30, 1961. He had been so employed for a nine-month period. The nursery is lo-

cated on a tract of land consisting of approximately fifteen acres of land, of which eight to ten acres is planted in trees, shrubs and other horticultural products. Some of the nursery stock was recently purchased elsewhere and planted on the property; some of the stock had been temporarily "heeled" into the ground; most of the trees and plants had been planted and nurtured in the nursery for a number of years. The nursery supplements the stock which it grows by purchasing items from other nurseries and growers. Most of the plants sold in the year 1961 were not purchased in that year but came from stock growing at the nursery. During 1961 the nursery derived approximately Ninety Thousand ($90,000) Dollars from the sale of horticultural products. The nursery division purchased approximately Twenty Thousand ($20,000) Dollars worth of horticultural plants of which only one-third was used in the 1961 planting; the balance remained in the nursery.

The nursery also performs various gardening services such as preparation and planting of lawns, delivery of plants and shrubs, preparation of the ground for plants, seeding, planting, fertilizing, spraying and pruning; various landscaping, lawn and garden maintenance jobs and other related services. They perform many of these services on a contractual basis.

The claimant received all his instructions at the nursery from the nursery foreman to whom he reported for work. His assignments included the loading and unloading of horticultural products, planting and transplanting, heeling, weeding and other services in the care of the nursery stock and grounds. He was also assigned by the nursery foreman to various jobs away from the nursery on the property of customers consisting mainly of the delivery of stock, preparation of the ground for planting, seeding, planting and maintenance of trees, shrubs and plants which were sold by the nursery.

The Bureau held that he was ineligible for benefits because he was an agricultural worker. He appealed on the ground that Hershey Estates nursery had developed into a ". . . full commercial unit; their employees doing all landscaping, lawn making and tree & shrubbery trimming for the public; mostly on a contract basis". That on this basis he was an industrial workman.

The Referee, on February 15, 1962 held that he was entitled to benefits. The Unemployment Compensation Board of Review by order of October 26, 1962 reversed the referee and denied benefits. The claimant's petition for reconsideration was granted and after the taking of additional testimony the Board then held the claimant was entitled to benefits. The employer's petition for reconsideration was then granted and after further argument the Board of Review by its order of August 10, 1964 held the claimant to be ineligible for benefits. This appeal followed.

Article I, §4(L)(4)(2)(a) and (d) of the Unemployment Compensation Act, Act of December 5, 1936, P. L. (1937) 2897, 43 PS §753, as amended, provides:

"(4) The word 'employment' shall not include—

"(1) Agricultural labor which shall include all services performed—

"(a) On a farm in the employ of any person in connection with cultivating the soil or in connection with raising or harvesting any agricultural or horticultural commodity . . .

. . .

"(d) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing or delivering to storage or to market or to a carrier for transportation to market any agricultural or horticultural commodity, but only if such service is performed as an incident to ordinary farming operations . . . The provisions of this paragraph shall not be deemed to be ap-

plicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption.

"As used in this subsection the term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animals and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities and orchards."

The Bureau of Employment Security issued the following statement of policy dated May 9, 1961 which reads as follows: "It is sometimes necessary for a producer of agricultural or horticultural commodities to purchase additional products not produced by himself, to augment his supply . . . The opinions handed down in a number of court cases provide a guide for an equitable policy in this respect. It is, therefore, our policy to rule that the exempt status of services is not disturbed when the purchases of outside products over a calendar year do not exceed 49% of the total of his own production plus the purchases." And too, the Bureau's standards of the same date, provide as follows: "Services performed in the planting of nursery stock on the property of customers of nurserymen shall be deemed to be incidental to the agricultural nature of the nursery enterprise and considered agricultural employment, providing the landscaping work is performed by regular employees of the nursery. This exception does not extend to services performed exclusively in the business of landscaping and disassociated with the growing and cultivation of nursery stock."

The issue in this case, of course, is whether the claimant was employed in covered employment within the meaning of the Pennsylvania Unemployment Compensation Law and the regulations promulgated there-

under as appears hereinabove. We have discussed the problem of agricultural labor at some length in *Wolfe Unemployment Compensation Case*, 185 Pa. Superior Ct. 413, 138 A. 2d 174 (1958), in which we said that the question depends on the facts of the individual case and that it is the nature of the work which determines whether the employee is engaged in agricultural labor and not the uses to which the product of his labor are put.

There is ample evidence in this record that the claimant was primarily engaged in a horticultural pursuit as defined in the Act and the regulations of the Board. Section 51 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 PS §551, provides, inter alia: "When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters . . . administrative interpretations of such law".

It is clearly indicated in the record that approximately one-third of his work was performed in the nursery, another approximately one-third on property of customers; and that the rest of the time he was engaged in loading and unloading nursery products, preparing the ground for planting and other work on or about the premises.

If we apply the standards of the Unemployment Compensation authorities to this record it is indicated that of the Ninety Thousand ($90,000) Dollars gross charged to customers only approximately $6666 worth of purchased products went into the outside planting business. It is noted that the outside services fall well within the Bureau's standards of "services performed in the planting of nursery stock on the property of customers of nurserymen shall be deemed to be incidental to the agricultural nature of the nursery enterprise". And most certainly the record does not support a conclusion that the services of this employee were "exclu-

sively in the business of landscaping and disassociated with the growing and cultivation of nursery stock." The law deems it to be agricultural labor when employed "On a farm . . . in connection with cultivating the soil or in connection with raising or harvesting any agricultural or horticultural commodity, . . . In handling, planting . . . delivering . . . any . . . horticultural commodity . . .". The law provides that a "farm" includes "nurseries" and "greenhouses" used primarily for raising horticultural commodities. Webster's Third New International Dictionary (Unabridged) defines "nursery" to mean, "An area where trees, shrubs, or plants are grown for transplanting, for use as stocks for budding and grafting, or for sale". Section 2 of The Pennsylvania Plant Pest Act of 1937, Act of April 21, 1937, P. L. 318, 3 PS §214.2, defines the term "nursery" as follows: ". . . any grounds or premises on or in which nursery stock is propagated or grown for sale or distribution, including any grounds or premises on or in which nursery stock is being fumigated, treated, packed or stored, or otherwise prepared or offered for sale or movement to other localities".

This record indicates that the nursery occupied eight to ten acres of growing ground; that trees, shrubs, plants and other horticultural products were grown for sale; that some of the plants had been there from six months to six years; that bulbs, ivy, privet, liners, roses, and some annuals were grown on the nursery property and in the greenhouse. The Board found as a fact that: "During the calendar year 1961, the Nursery Division of Hershey Estates purchased approximately $20,000 worth of horticultural plants; the total of charges for plant materials made to its customers was approximately $90,000; labor and equipment charges amounted to approximately $40,000; and only approximately 33% of the $20,000 purchases was used in 1961 planting."

It is true that most of the horticultural products were purchased rather than grown from seed but this does not change the horticultural nature of the enterprise. Reading this record, including the testimony of the claimant as he describes the duties he performed in his employment, we can come to only one conclusion, that the nature of his services fall well within the guide lines laid down by the legislature and by administrative regulation as to what constitutes an employee of a "nursery" and as such an agricultural worker not in covered employment.

Decision affirmed.

DISSENTING OPINION BY WRIGHT, J.:

It is my view that the findings of fact made by the Board of Review require the legal conclusion that this claimant was not employed in agricultural labor as defined in the Unemployment Compensation Law. I would therefore reverse the Board's decision on the ground that claimant's services were performed in employment covered by the statute.