**MODULAR BUILDING SYSTEMS ASSOCIATION, Petitioner**

v.

**DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 7, 2004.

Decided Sept. 28, 2004.

Steven R. Snyder, Harrisburg, for petitioner.

James A. Holzman, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEADBETTER.

Petitioner, Modular Building Systems Association, a non-profit trade association that represents Pennsylvania manufacturers, builders and suppliers in the industrialized housing industry, has filed an amended petition for review in this court's original jurisdiction seeking a declaratory judgment that certain provisions of the Uniform Construction Code [1] are null and void to the extent they seek to regulate industrialized housing. Before the court for disposition are the Department of Labor and Industry's (Department) preliminary objections to the amended petition for review and petitioner's application for summary relief. The issue presented is whether the Department may properly regulate certain activities pertaining to industrialized housing in light of the statutory exemption for industrialized housing that is contained in the Pennsylvania Construction Code Act.[2] Because we recently addressed this issue in DRB, Inc. v. Pennsylvania Department of Labor and Industry, 853 A.2d 8 (Pa.Cmwlth.2004), concluding therein that the Department's

---

1. Chapters 401, 403 and 405 of Title 34 of the Pennsylvania Code.

2. Act of November 10, 1999, P.L. 491, as amended, 35 P.S. §§ 7210.101–7210.1103.

regulation of manufactured and industrialized housing was a proper exercise of its authority, we sustain the Department's preliminary objection in the nature of a demurrer and dismiss petitioner's application for summary relief.[3]

Although a more comprehensive review of the Construction Code Act (CCA), the Uniform Construction Code (Construction Code), the Industrialized Housing Act[4] and the regulations pertaining thereto,[5] is set forth in our opinion in DRB, we note summarily that the CCA was enacted in 1999 to establish uniform and modern construction standards throughout the Commonwealth. Section 102 of the CCA, 35 P.S. § 7210.102; DRB, 853 A.2d at 10. The CCA applies to the "construction, alteration, repair and occupancy of all buildings in the Commonwealth." Section 104 of the CCA, 35 P.S. § 7210.104(a). Section 901 of the CCA, which exempts "industrialized housing" from the Act's scope, provides in pertinent part:

This Act shall not apply to manufactured housing which bears a label, as required by and referred to in the Act ... known as the Manufactured Housing Construction and Safety Standards Authorization Act [Manufactured Housing Act], which certifies that it conforms to Federal construction and safety standards adopted under the Housing and Community Development Act of 1974 ... nor shall it apply to industrialized housing, as defined in the Act ... known as the Industrialized Housing Act.

35 P.S. § 7210.901(a). The Industrialized Housing Act defines "industrialized housing" as:

[A]ny structure designed primarily for residential occupancy which is wholly or in substantial part made, fabricated, formed or assembled in manufacturing facilities for installation, or assembly and installation, on the building site; however, for the purposes of this Act, that category of housing units defined as mobile homes is excluded from this definition.

Section 3 of the Industrialized Housing Act, 35 P.S. § 1651.3. See also 12 Pa.Code § 145.1.

Pursuant to the CCA, the Department promulgated the Construction Code, which applies to the "construction, alteration, repair, movement, equipment, removal, demolition, location, maintenance, occupancy or change of occupancy of every building or structure which occurs on or after April 9, 2004...." 34 Pa.Code § 403.1(a); DRB, 853 A.2d at 11. Like the CCA, the Construction Code contains an exclusion for

---

3. The Department's preliminary objections raise various legal challenges to the petitioner's amended petition for review, including a demurrer and an assertion that petitioner lacks the capacity to sue on behalf of its members because it failed to allege that the regulations would cause its members to suffer a direct, immediate and substantial injury. In considering preliminary objections in the nature of a demurrer, we accept as true all well-pled facts and all inferences reasonably deducible therefrom. DRB, Inc. v. Pennsylvania Dep't of Labor & Indus., 853 A.2d 8 (Pa. Cmwlth.2004).

Petitioner's application for summary relief mirrors its petition for review, asserting that the Department's regulations pertaining to industrialized housing are improper because the Construction Code Act exempts industrialized housing from its provisions. Summary relief is granted when the undisputed facts demonstrate that a party has a clear right to the relief requested. Id. See also Pa. R.A.P. 1532(b). When the question presented is purely legal and no facts are in dispute, summary relief may be granted.

4. Act of May 11, 1972, P.L. 286, as amended, 35 P.S. §§ 1651.1–1651.12.

5. The regulations promulgated pursuant to the Industrialized Housing Act appear in Chapter 145 of Title 12 of the Pennsylvania Code.

industrialized housing. Section 403.1(b)(5) provides that the Construction Code does not apply to "[m]anufactured or industrialized housing shipped from the factory under section 901(a) of the act (35 P.S. § 7210.901(a)) as provided in § 403.25 (relating to manufactured and industrialized housing)" 34 Pa.Code § 403.1(b)(5). *See also DRB*, 853 A.2d at 12.

Notwithstanding the exemption for industrialized housing in Section 901 of the CCA, the Department promulgated regulations governing certain activities that are necessary to the final installation of an industrialized house at the home site. Pursuant to Section 403.25(b) of the Construction Code, site preparation, foundation construction, utility connections and construction, alteration or repair of the industrialized housing unit following its installation are subject to regulation. Specifically, Section 403.25 provides in pertinent part:

(b) Industrialized housing is governed by the following under section 901(a) of the act:

(1) Except as provided in subsection (b)(2), the [Construction Code] does not apply to industrialized housing assembled by and shipped from the manufacturer.

(2) The [Construction Code] applies to all of the following:

(i) Site preparation.

(ii) Foundation construction.

(iii) Utilities connection.

(iv) Construction, alteration or repair to the industrialized housing unit after installation. . . .

34 Pa.Code § 403.25(b).[6] The Construction Code preempts construction standards of any existing statute, local ordinance or regulation promulgated or adopted by a board, department, commission, State agency or local government. Section 104(d)(1) of the CCA, 35 P.S. § 7210.104(d)(1). *See also* Section 301 of the CCA, 35 P.S. § 7210.301(d)(1); *DRB*, 853 A.2d at 12.

In its amended petition for review and application for summary relief, petitioner contends that the Department's regulation of industrialized housing site preparation, foundation construction and utility connections violates the express exemption for industrialized housing contained in the CCA. According to petitioner, the CCA exemption applies to both the manufacture of industrialized housing at the factory and to any work performed at the home site. According to petitioner, industrialized housing is exempt from regulation because all activities associated with the manufacture and installation of industrialized homes, including site preparation, foundation construction and utility connections, are currently and comprehensively regulated pursuant to the Industrialized Housing Act. In support of this argument, petitioner points to various provisions in the regulations promulgated pursuant to the Industrialized Housing Act which indicate that the Act governs installation of industrialized housing.[7] Petitioner maintains

---

**6.** This is the only Section of the Code that petitioner specifically contends violates the CCA's exemption for industrialized housing. *See* Amended petition for review, par. 22.

**7.** Specifically, petitioner points to: (1) 12 Pa Code § 145.2(2), which provides that the purpose of the industrialized housing regulations is to establish "uniform procedures to assure that industrialized housing and housing com-

ponents . . . will be manufactured, transported and *installed* in compliance with the uniform standards adopted by [the regulations] [emphasis added];" (2) 12 Pa.Code § 145.3, which provides that the regulations "govern the design, manufacture, storage, transportation and *installation* of industrialized housing and housing components . . . . [emphasis added];" and (3) 12 Pa.Code § 145.81(a)(2), which provides that local enforcement agen-

that "installation" includes site preparation, foundation construction and utility connection. These arguments lack merit for several reasons.

■ First, we note that Section 3 of the Industrialized Housing Act defines "installation" as "the assembly of industrialized housing on site and the process of affixing industrialized housing or housing components to land, a foundation, footings, utilities or an existing building." 35 P.S. § 1651.3. *See also* 12 Pa.Code § 145.1. Thus, as defined by the Industrialized Housing Act, "installation" pertains to both the assembly of the home at the home site and the securing or attaching of the home to the property; "installation" as defined does not include site preparation or foundation construction. Moreover, while the definition of "installation" in the Industrialized Housing Act includes the connection to utilities, the corresponding regulations specifically provide that the connection of utilities from the exterior wall of the home to the main source of supply, power or drainage shall comply with local codes and ordinances and are subject to local enforcement. *See* 12 Pa. Code §§ 145.36(d), 145.81(a).

Second, Section 403.25(b) of the Construction Code expressly brings only site preparation, foundation construction, utility connections and post-installation modifications within the purview of the Construction Code; it does not apply to the installation (specifically the assembly and attachment to land, footings or foundation) of industrialized homes.[8] Indeed, the Department agrees that the Industrialized Housing Act governs installation (again the assembly and attachment of the home to land, footings or foundation) of industrialized homes and concedes that the Construction Code and Section 403.25(b) do not apply to those installation activities.[9]

Finally, as the Department notes, this court has held that industrialized housing site preparation, foundation construction and utility connections are properly subject to regulation under the CCA and the Construction Code. *See DRB.*

In *DRB*, two corporate retailers of manufactured and industrialized homes filed a petition for review in this court's original jurisdiction, contending, inter alia, that Section 403.25 of the Construction Code impermissibly regulated manufactured and industrialized housing site preparation,

cies shall assist the Department of Community and Economic Development in enforcing the Industrialized Housing Act and associated regulations at the time of installation by, inter alia, conducting "[s]ite inspections of industrialized housing and housing components at the site for nonconformity with the installation instructions in the Building System Approval Report."

8. In this regard, the scope of the regulations differ with respect to industrialized and manufactured housing. As we noted in *DRB*, the Construction Code incorporates by reference Appendix E of the International Residential Code, which sets standards for installation of *manufactured homes*. The regulations pertaining to installation of *industrialized housing* were adopted pursuant to the Industrialized Housing Act, not the CCA.

9. We note that when petitioner set forth the text of Section 403.25(b)(2) in its appellate brief, it added the term "installation" to that subsection despite the fact that the Section clearly does *not* include *"installation"* as one of the industrialized housing activities subject to Departmental regulation. *See* petitioner's brief at 18. Obviously this leads to some confusion because counsel argues that since the Industrialized Housing Act already regulates industrialized housing installation, the Construction Code is in direct conflict with that Act. We assume this was an oversight and not a deliberate attempt to mislead the court. We recommend that counsel use more care in the future when quoting regulatory provisions, especially when the mistake is so intertwined with the argument.

foundation construction, connection to utilities and other changes to the structure because the CCA specifically exempts manufactured and industrialized housing from its scope. This court reviewed the Manufactured Housing Act,[10] the National Manufactured Housing Construction and Safety Standards Act of 1974,[11] the Industrialized Housing Act, and the CCA, and concluded that the exemption contained in Section 901 of the CCA for manufactured and industrialized housing applied only to the housing unit constructed at the factory and not to those activities that occur at the home site, namely site preparation, foundation construction, utility connections and post installation modifications. 853 A.2d at 16–17. Specifically, this court opined:

> The above-referenced statutory and regulatory schemes, which require that a manufactured or industrialized home bear a label of certification that the home complies with State and/or federal standards in order to be sold, that the homes are affixed with the labels prior to sale and prior to placement activities on the home site and that the presence of such label is deemed to satisfy the requirements of all local building requirements, support the Department's interpretation that the exemption in the CCA for manufactured and industrialized homes refers only to the unit itself which bears the certification label and which is shipped from the manufacturer, and does not encompass activities that occur after the sale to install [12] the home at the home site. The statutory definitions of manufactured home and industrialized home also support the Department's interpretation as both definitions describe only the movable

structure before it has been secured or installed at the building site. We especially note that the definition of a manufactured home in the Manufactured Home Act expressly states that the structure defined as a manufactured home includes the plumbing, heating, air conditioning and electrical systems contained therein; the structure as defined does not encompass post sale activities such as the construction of a foundation.

The Department's interpretation is reasonable because the construction of a manufactured home is subject to detailed, comprehensive federal construction and safety standards that preempt any State or local standards that are not identical. Similarly, the regulations governing industrialized housing have incorporated model codes such as the BOCA National Building Code and the International Code Council (ICC) International Mechanical Code and Plumbing Code to establish standards for the design and manufacture of industrialized homes. Both the Manufactured and Industrialized Housing Acts provide that the home's compliance with the applicable standards satisfies local municipal standards addressing the same areas of concern. Thus, before the CCA was enacted, these two types of homes were already being manufactured under a uniform, comprehensive set of federal or State standards. Accordingly, it is logical that the manufacture of such homes is exempted from the CCA, the purpose of which is to, among other things, encourage standardization in construction and use of state-of-the-art technology

---

**10.** Act of November 17, 1982, P.L. 676, as amended, 35 P.S. §§ 1565.1–1656.9.

**11.** 42 U.S.C. §§ 5401–5427.

**12.** We note that the term "install" is used in the general sense and not as specifically defined in the Industrialized Housing Act.

and improvements as well as elimination of conflicting codes and standards.

Further, placement activities such as site preparation, foundation construction and utility connection, are generally subject to local regulation rather than regulation under the federal Act or the Manufactured or Industrialized Housing Acts. Indeed, petitioners aver in their petition for review that "[s]ome municipalities regulate the site preparation, foundation construction and connection to utilities ... others do not." Petition for review, para. 52. This is borne out by our review of the relevant federal and State statutes.

. . . .

[N]either the Manufactured Housing Act nor the Industrialized Housing Act appear to contain any significant or comprehensive standards for placement activities. Both Acts specifically leave utility connections to local regulation and the regulations promulgated under the Industrialized Housing Act leave site preparation work to local regulation. To the extent that either Act's regulations might govern some placement activities,[17] such would be preempted by the CCA [as provided in Section 104, 35 P.S. § 7210.104]. Thus, the fact that placement activities were primarily subject to local regulation prior to the CCA further supports the conclusion that the exemption for manufactured and industrialized housing in the CCA refers only to the factory constructed structure and not the post-sale activities necessary to install the home at the home site. It is logical for the Code to include these activities in its provisions because it is replacing individual local municipal

codes and regulations with state-wide uniform standards. Accordingly, we accept the Department's interpretation of the Section 901 exemption because it tracks the language of the CCA, it is consistent with the articulated purposes of the CCA, and it is consistent with the statutory scheme governing manufactured and industrialized housing.

---

[17] Our review of the Manufactured Housing Act and accompanying regulations did not reveal any provisions governing placement activities. As to the Industrialized Housing Act and its regulations, we did not discover any specific provisions governing placement activities, but, the regulations do incorporate the BOCA National Building Code and the CABO One and Two Family Dwelling Code, which might include standards for foundation construction and utility connections. See 12 Pa.Code §§ 145.41, 145.42.

*Id.* at 16–18. Thus, following *DRB*, we again conclude that the Department's regulation of industrialized housing site preparation, foundation construction and connection to utilities is a proper exercise of its authority.

Accordingly, we dismiss the petitioner's application for summary relief and grant the Department's preliminary objection in the nature of a demurrer.[13]

### *ORDER*

AND NOW, this 28th day of September, 2004, the preliminary objection in the nature of a demurrer of the Department of Labor and Industry in the above captioned matter is hereby SUSTAINED and the amended petition for review is DISMISSED.

---

13. The Department also filed a preliminary objection pursuant to Pa. R. Civ. P. No. 1028(a)(5), contending that petitioner's amended petition should be dismissed because petitioner's averments are insufficient to demonstrate that it has capacity to sue on behalf of its members. We need not address this preliminary objection or the others in light of our grant of the Department's demurrer.

Petitioner's application for summary relief is hereby DISMISSED.