536 A.2d 467

Elsie and Russell Worobec t/d/b/a Meadowood Farm, Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Elsie and Russell Worobec t/d/b/a Meadowood Farm, Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

644

Submitted on briefs November 16, 1987, to Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*C. Edward S. Mitchell,* with him, *Gary L. Weber, Mitchell, Mitchell & Gray,* for petitioners.

*James K. Bradley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, January 21, 1988:

Meadowood Farm petitions for review of the Orders of the Unemployment Compensation Board of Review (Board) which reversed a referee's denial of unemployment compensation benefits to William and Ellen Korsack. The Korsacks filed their claims for benefits on February 16, 1986. On February 24, 1986, the Office of Employment Security (OES) issued its decision, finding

the Korsacks to be ineligible for benefits. On appeal, a hearing on both claims was held before Referee Jean Warwick. On April 4, 1986, she issued decisions affirming the OES's denial of benefits in both claims. The Korsacks appealed to the Board and on September 3, 1986, the Board issued orders reversing the referee's denial of benefits.

The Korsacks, husband and wife, worked for Meadowood Farm and its owner, Elise Worobec (Worobec) from on or about October 31, 1982, until February 17, 1986. Meadowood Farm is a farm, a portion of which is leased to a neighbor for farming and agricultural purposes. The remainder of the farm is utilized for the breeding, raising, showing and sale of horses. The Korsacks performed duties solely in connection with the horse-raising aspect of the farm. Mr. Korsack was responsible for the care, maintenance, breeding, training and showing of horses at the farm. Mrs. Korsack was hired to assist her husband and was in charge of maintaining expense, breeding and show records. In March of 1984, Mrs. Korsack ceased maintenance of financial records but continued to maintain the breeding and show records.

The issue before this Court is whether the Board erred in concluding that the Korsacks' employment on the Meadowood Farm which included the care, maintenance, breeding, training and showing of horses, as well as the bookkeeping pertaining thereto, constituted covered employment under Section 4 of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §753.

In unemployment compensation cases, the burden of proving eligibility for benefits lies with the claimant. *Pacini v. Unemployment Compensation Board of Review*, 102 Pa. Commonwealth Ct. 355, 518 A.2d 606

(1986). Here, the Korsacks had the burden of proving that they were "employed" within the meaning of the Act. They prevailed before the Board. Our scope of review of the Board's order is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether any necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Section 401 of the Act provides that compensation is payable to any employee who becomes unemployed and who has been paid wages for "employment." As defined in Section 4(l)(1) of the Act:

(l)(1) 'Employment' means all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, including service in interstate commerce, and service as an officer of a corporation.

This definition of employment is pertinently limited by Sections 4(l)(4)(a) and (b) which read:

(4) The word 'employment' shall not include—

(1) Agricultural labor which shall include all services performed—

(a) On a farm in the employ of any person in connection with cultivating the soil or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife.

(b) In the employ of the owner or tenant or other operator of a farm in connection with the operation, management, conservation, improvement or maintenance of such farm and its tools and equipment or in salvaging timber or clear-

ing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm.

Meadowood Farm submits that the Korsacks were engaged in agricultural labor which is excluded from "employment" under the Act and therefore are not entitled to unemployment compensation benefits. A review of the record and the relevant statutory provisions reveals that the Board committed an error of law in ruling that the Korsacks were not engaged in agricultural labor.[1] Testimony presented by Worobec indicated that

---

[1] The only findings of fact made by the Board to support its conclusion of law in each case that the Korsacks were not engaged in agricultural labor were as follows. As to Mr. Korsack:

1. The claimant was last employed by Meadowood Farm for three years and four months as a manager trainer of horses at a final weekly salary of $225.00. His last day of work was February 17, 1986 and his separation from that employment is not at issue.

2. The owner of Meadowood Farm raises horses for both breeding and show purposes.

As to Mrs. Korsack:

1. The claimant was last employed by Meadowood Farm for three years and four months at a weekly wage of $100. Her last day of work was February 17, 1986 and her separation from that employment is not at issue in this appeal.

2. The owner of Meadowood Farm raises horses for both breeding and show purposes.

3. The claimant was employed assisting her husband who was hired as manager trainer of the horses and that work included bookkeeping.

The Board, in its brief to this Court, has averred that the basis for its decision lies in Section 4(3)(G)(a)(1)(2) of the Act. The Orders of the Board are void of any findings of fact or conclusions of law which support these averments. In addition, we decline to remand this matter for additional findings of fact on this issue, as we do not find substantial evidence in the record upon which the Board could base a grant of benefits to the Korsacks under this Section of the Act.

the Korsacks were hired to raise, maintain, train and show horses as well as to operate and manage the farm. The agreement of hire which both parties admitted having entered into also sets forth these responsibilities with particularity. The Korsacks themselves testified that their work on the farm involved the breeding, raising, caring for and training of horses.

There are no recent appellate decisions which are directly on point in this matter. However, in the case of *Seley v. Unemployment Compensation Board of Review*, 185 Pa. Superior Ct. 413, 138 A.2d 174 (1958), it was held that the issue of whether a particular worker is engaged in "agricultural labor" must be decided upon the facts of each particular case and the wording of the statute which is being interpreted.

In the instant case, it is undisputed that the place at which the Korsacks were employed is a farm. The language of the Act is clear and free from all ambiguity. The words of the statute define "agricultural labor" as that which involves, among other things, the raising, caring for, training and management of livestock. First, we must consider the duties of Mr. Korsack as manager trainer of the horses on Meadowood Farm. He was involved in the raising, breeding and training of horses. Clearly, if we consider horses to be livestock, we must conclude that Mr. Korsack was engaged in agricultural labor under the Act.

The general rule, in interpreting terms in a statute, is that "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage. . . ." *See* Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903(a). Surely, the common and approved usage of the term "livestock" would include horses. As defined in the American Heritage Dictionary of the English Language 764 (1979), "livestock" includes: "[d]omestic ani-

mals, such as cattle, horses, sheep, hogs, or goats, raised for home use or for profit."

Moreover, other statutes enacted by the Pennsylvania General Assembly which relate to agriculture have defined "livestock" to include horses.[2] For example, in Section 903 of the Agricultural Area Security Law, Act of June 30, 1981, P.L. 128, 3 P.S. §903, the phrase "crops, livestock and livestock products" is defined to include "[l]ivestock and livestock products, including cattle, sheep, hogs, goats, horses, poultry, furbearing animals, milk, eggs and furs." In addition, Section 459-102 of the Dog Law, Act of December 7, 1982, P.L. §784, *as amended,* 3 P.S. §459-102, specifically defines "livestock" as being "[m]embers of the equine, bovine, ovine, caprine, and procine species, and confined domestic hares, rabbits and mink." Horses are of the equine species and are clearly "livestock" within the meaning of this statute.

Because the common usage of the term "livestock" includes horses and the General Assembly has defined the term in other statutes relating to agriculture as including horses, we are led to the inevitable conclusion that the General Assembly intended the term "livestock" as used in the Act to include horses. Therefore, because Mr. Korsack was engaged in the raising, breeding and caring for horses, which are livestock, we must conclude that he was an agricultural laborer within the meaning of the Act. Being so, he was not engaged in covered employment under the Act and must be denied benefits.

---

[2] In the event that the words of a statute are not explicit, the intent of the General Assembly may be ascertained by considering other statutes upon the same or similar subjects. *See* Section 1921(c)(5) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(c)(5).

It is of no moment that these horses were bred, raised and trained for show purposes rather than for use on the farm. Section 4(l)(4)(1)(a) of the Act indicates that it is the nature of the work performed by the claimant and not the uses to which the product of his labor are put which is determinative of his status as an agricultural laborer.

We are also constrained to reverse the grant of benefits to Mrs. Korsack. Her testimony indicates that she was hired by Meadowood Farm to assist her husband. Ultimately, she was in charge of the expense, breeding and show records for the horses. Her labor clearly falls within the definition of agricultural labor as set forth in Section 4(l)(4)(1)(b) of the Act, which refers to the operation and management of the farm. The keeping of records is a key part of the smooth operation and management of a horse-raising farm. We must conclude that Mrs. Korsack was an agricultural laborer within the meaning of the Act. Therefore, she was not engaged in covered employment under the Act and must be denied benefits.

The Board made errors of law in granting benefits to the Korsacks, who were employed in agricultural labor. Accordingly, the Orders of the Board are reversed.

## ORDER

AND NOW, this 21st day of January, 1988, the Orders of the Unemployment Compensation Board of Review in the above-captioned matters are reversed.