**Ronald SAMSEL, as an Individual and Thoroughbred Racing Stables, LLC, Appellants**

**v.**

**UNIFORM CONSTRUCTION CODE BOARD OF APPEALS OF JEFFERSON TOWNSHIP.**

**Appeal of: Jefferson Township.**

Commonwealth Court of Pennsylvania.

Argued Oct. 14, 2010.

Decided Dec. 10, 2010.

Elizabeth A. Magovern, Wyomissing, for appellant Jefferson Township.

Larry W. Miller, West Lawn, for appellees Ronald Samsel and Thoroughbred Racing Stables, LLC.

BEFORE: LEAVITT, Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Jefferson Township appeals an order of the Court of Common Pleas of Berks County (trial court) holding that Ronald Samsel did not need a building permit to construct a stable for race horses. The trial court found that Samsel's proposed stable was an agricultural building and, as such, exempt from the requirements of the Pennsylvania Construction Code Act (Construction Code).[1] Finding no error in the trial court's opinion, we affirm.

In May 2008, Samsel, who is sole shareholder of Thoroughbred Racing Stables, LLC, applied to the Jefferson Township Building Code Administrator for permits to construct a stable that would be used to house race horses. Samsel engaged Timber Tech Engineering, Inc., to assist with drafting the construction plans and permit applications. Timber Tech advised Samsel that the proposed stable was an "agricultural building" and, as such, did not need a

building permit. In January 2009, the solicitor for the Township agreed, advising Samsel that he did not need a permit so long as the proposed stable would not be open to and used by the general public.

In March 2009, Samsel requested final approval of the site plan from the Board of Supervisors of Jefferson Township. The Board of Supervisors responded that Samsel needed a building permit for his stable. Samsel again requested final approval from the Board of Supervisors in June 2009, and, again, was told to secure a permit for his proposed stable. In spite of this advice, Samsel began construction. In April 2009, the Township issued a Stop Work Order to Samsel, who appealed. The Board of Appeals held that a building permit was needed because the stable was not an "agricultural building" and, thus, not exempt from the Construction Code. Accordingly, the Board upheld the Stop Work Order.

Samsel appealed to the trial court, and the Township intervened. The trial court reversed the Board of Appeals. The trial court held that Samsel's stable, which would be used to house race horses and store their feed, was an "agricultural building." Further, the trial court found that access to the stable would be limited to a "delineated few, likely to include owners, trainers, veterinarians and prospective buyers," and not the general public. Trial Court Opinion at 4–5. For these reasons, the trial court held that Samsel's building met the Construction Code's definition of an agricultural building and did not need a permit.

On appeal,[2] the Township presents one issue for our consideration. It contends

---

1. Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101–7210.1103.

2. Where the trial court takes no additional evidence, this Court's review of an appeal from a local government agency's adjudication is limited to determining whether there

that the trial court misapplied the statutory definition of "agricultural building" to Samsel's stable. First, it contends that race horses are not "farm animals" or "livestock" within the meaning of the Pennsylvania Construction Code and, thus, a building to house race horses is not an agricultural building. Second, it contends that because the stable will be used by the general public, it cannot be an agricultural building. Thus, the Township contends that Samsel needed a building permit.

 We begin with a review of the applicable provisions of the Construction Code and the "Uniform Construction Code" regulation. The regulation requires an owner, or his agent, to obtain a building permit before constructing a "commercial building." 34 Pa.Code § 403.42(a).[3] However, the regulation also exempts from its requirements "an agricultural building." 34 Pa.Code § 403.1(b). Section 103 of the Construction Code defines an "agricultural building" as follows:

> "Agricultural building." *A structure utilized* to store farm implements, hay, feed, grain or other agricultural or horticultural products or *to house* poultry, *livestock or other farm animals,* a milk house and a structure used to grow mushrooms. The term includes a car-

riage house owned and used by members of a recognized religious sect for the purposes of housing horses and storing buggies. *The term shall not* include habitable space or spaces in which agricultural products are processed, treated or packaged and shall not *be construed to mean a place of occupancy by the general public.*

35 P.S. § 7210.103 (emphasis added). The terms "livestock" and "farm animals" are not defined in the Construction Code or its regulation.

The Township contends that the trial court erred in concluding that race horses are "livestock" or "farm animals" within the meaning of the Construction Code. The Township reasons that race horses cannot be considered "farm animals" because they do not engage in agricultural activities. Further, the Township argues that the trial court, which applied a dictionary definition of "livestock," misapplied that definition.[4] That definition provides that "livestock" are animals that can be confined without "seriously impairing their utility." The Township argues that keeping race horses confined to a stable impairs their utility to run races.

---

was a violation of constitutional rights; an error of law; or the agency's findings of fact necessary to support its adjudication are not supported by substantial evidence. Pennsylvania Local Agency Law, 2 Pa.C.S. § 754(b).

3. Section 403.42(a) provides that

> *[a]n owner* or authorized agent *who intends to construct,* enlarge, alter, repair, move, demolish or change the occupancy of *a commercial building,* structure and facility or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical, or plumbing system regulated by the Uniform Construction Code *shall first apply to the building code official and obtain the required permit under* § 403.42a (relating to permit application).

34 Pa.Code § 403.42(a) (emphasis added).

4. The trial court used the following definition of "livestock":

> Domestic animals and fowls that (1) are kept for profit or pleasure, (2) can normally be confined within boundaries without seriously impairing their utility, and (3) do not normally intrude on others' land in such a way as to harm the land or growing crops. BLACK'S LAW DICTIONARY 953 (8th ed.2004). The trial court found that the race horses are domestic animals; kept for profit and pleasure; can be housed within the confines of the barn without impairing their utility; and do not intrude on others' land.

Samsel responds that horses are indisputably farm animals. By requiring that the horses must be used to cultivate the soil or produce crops in order to be farm animals, the Township is actually confusing "farm animals" with "farm*ing* animals." Chickens, pigs, and cows are not used to cultivate land, but no one would argue that they are not farm animals. Further, Samsel points out that the horses will freely roam the fields on his property, alleviating any concern about damaging the race horses by periodic confinement in the stable.

In *Worobec v. Unemployment Compensation Board of Review,* 112 Pa.Cmwlth. 643, 536 A.2d 467, 469 (1988), this Court held that "the common and approved usage of the term 'livestock' would include horses." In that case, we held that persons engaged in raising, breeding and caring for horses were agricultural laborers within the meaning of the Unemployment Compensation Law. We further explained that

> [b]ecause the common usage of the term "livestock" includes horses and the General Assembly has defined the term in other statutes relating to agriculture as including horses, we are led to the inevitable conclusion that the General Assembly intended the term "livestock" to include horses.

*Id.* at 470. This Court specifically held that it "is of no moment that these horses were bred, raised and trained for show purposes rather than for use on the farm." *Id.* These principles have equal force here. The horses to be housed in Samsel's

stable are livestock, regardless of their breeding and training as race horses.

In sum, because Samsel's stable will be used to "house" race horses, which are "livestock or other farm animals," it meets the definition of "agricultural building" set forth in Section 103 of the Construction Code, 35 P.S. § 7210.103.

■ The Township argues, however, that even if a stable for race horses is a "structure" used to "house livestock," it does not meet the definition of agricultural building. In this argument, the Township relies upon the qualifier in Section 103 that an agricultural building "shall not . . . be construed to mean a place of occupancy by the general public." 35 P.S. § 7210.103. The Township argues that Samsel's stable will be used and occupied "by the general public." In this regard, the Township points to Samsel's permit application, later withdrawn, which described his proposed stable as a "commercial" building.[5]

The Township explains that Samsel's stable should be structurally sound to ensure the safety of the "general public" which will occupy the stable from time to time. By contrast, a barn that stores farm implements and houses farm animals does not present a risk to the general public and, thus, need not be constructed in accordance with the Construction Code's standards. The Township notes that physical access to Samsel's property is limited only by a gate and surveillance camera, which are inadequate to prevent uninvited persons from entering the property.

---

**5.** The Township also notes that Samsel's site plan states that the Uniform Construction Code is the applicable regulation for his proposed structure. Samsel responds that he *did* follow the terms of the Uniform Construction Code, *i.e.*, the exemption for an agricultural building. Further, the record explains that Samsel mistakenly believed his stable required a permit when he submitted his application. That mistake is not binding on Samsel or on this Court. In any case, a building can be both agricultural and commercial; the terms are not mutually exclusive. The Construction Code exempts from its requirements one type of commercial building, *i.e.*, an agricultural building.

Samsel counters that the stable will not be open to, or occupied by, the general public. Zoo exhibit buildings or sports stadiums are examples of places that house animals and are frequented by members of the general public and, thus, not "agricultural" buildings. Here, only persons with a private contract with Samsel, *i.e.*, trainers, veterinarians and purchasers, will be permitted onto the property. These persons can gain access only through a gate fitted with an electronic keypad lock. These restrictions on access are directly at odds with a commercial building to which the general public is invited for the conduct of business. We agree.

The record established that Samsel's stable will not be "a place of occupancy by the general public." As found by the trial court, the farm will not host public events and only a select few, such as veterinarians and purchasers, will enter the property. These are the same select few that would visit a dairy farm, for example, with a barn housing the cows. The Township's argument regarding potential trespassers lacks merit. Samsel does not have to hire a private police force to prevent entry to his property in order for his stable to be considered an agricultural building. By the Township's logic, a private residence is open to the general public whenever a trespass occurs or emergency workers appear.

For the above-stated reasons, we hold that the proposed stable falls within the agricultural building exception to the permit process under the Construction Code, and thus, affirm the order of the trial court.

### ORDER

AND NOW, this 10th day of December, 2010, the order of the Court of Common Pleas of Berks County dated January 20, 2010, in the above captioned matter is hereby AFFIRMED.