**In re APPEAL OF Rick and Lorie MILLER from the Decision of Bedminster Township Uniform Construction Code Board of Appeals for Tax Map #1–18–29.**

**Appeal of: Rick and Lorie Miller.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2013.

Decided Dec. 9, 2013.

---

Edward M. Wild, Doylestown, for appellants.

John B. Rice, Perkasie, for appellee Bedminster Township Uniform Construction Code Board of Appeals.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Rick and Lorie Miller appeal an order of the Court of Common Pleas of Bucks County (trial court), which affirmed the determination of the Bedminster Township Uniform Construction Code Board of Appeals (Board) that the Millers needed a building permit to construct a barn on their property. The trial court held that the proposed barn was not an agricultural building and, as such, was not exempt from the permitting requirements of the Pennsylvania Construction Code Act.[1] We reverse.

The Millers own a 25–acre property located at 4841 Applebutter Road in Pipersville, Bedminster Township (Township).[2] On the property there is a single family dwelling, an above-ground pool and a barn, which has stables and an office for Mr. Miller's business as an electrician. The Millers also use their property for a nonprofit corporation, Rainbow Ridge Farm, which provides riding and equestrian care lessons, including a therapeutic riding program for special needs children. The Millers have a building permit that allows the use of their existing barn for these equestrian activities. There are currently 28 horses on the property, 18 of which are owned by the Millers. The remaining ten horses are owned by individuals who have boarding contracts with the Millers.

The Millers sought a permit from the Township to construct a new 72–foot by 130–foot barn that would contain stables, storage space and a space for exercising the stabled horses in bad weather. The Township denied the permit on June 18, 2008, and the Millers did not appeal. Instead, on August 11, 2011, the Millers notified the Township's building code officer that they intended to construct the new barn without a permit because it was an agricultural building and, thus, exempt from the requirements of the Construction Code Act. The Township's code officer,

---

1. Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101–7210.1103.

2. The property is located within the Township's Agriculture Preservation Zoning District, where the permitted uses include residential use, "trade business," and "equestrian use." On May 5, 2008, a permit was granted to the Millers for equestrian use. An "equestrian use" is defined as "[a]n establishment where instruction in riding, jumping, and showing horses is offered and/or the general public may, for a fee, hire horses for riding." TOWNSHIP OF BEDMINSTER ZONING ORDINANCE, Section 405.A.A7 (April 13, 2011).

Shawn McGlynn, issued a stop work order, and the Millers appealed to the Board.

On February 29, 2012, and March 29, 2012, the Board held hearings. At the hearing, McGlynn testified to the findings of his inspection that prompted him to issue the stop work order. Lorie Miller described the property and Rainbow Ridge Farm's operations. She explained that the proposed new barn will be enclosed by fencing and secured with a locked keypad. It will not be open to members of the public but only to employees and individuals who have a contractual relationship with Rainbow Ridge Farm. The barn will be outfitted with a riding ring to exercise the horses, particularly during inclement weather. The Board concluded that the barn was not an "agricultural building" and, thus, was not exempt from the building permit requirements of the Construction Code Act. Accordingly, the Board upheld the stop work order.

The Millers appealed to the trial court, and the Township intervened. The trial court affirmed on the basis of the record before the Board. The trial court rejected the Millers' characterization of the proposed barn as an "agricultural building," finding that it would be open to and occupied by the general public. The Millers now appeal to this Court.[3]

On appeal, the Millers argue that the trial court erred by holding that the proposed barn was not an "agricultural building." They contend that a building that shelters horses is an "agricultural building" and exempt from the requirements of the Construction Code Act.[4]

We begin with a review of the applicable provisions of the Construction Code Act and its implementing regulations, which are known as the Uniform Construction Code. Section 403.42(a) of the Uniform Construction Code requires an owner, or his agent, to obtain a building permit before constructing a "commercial building." 34 Pa.Code § 403.42(a).[5] Notably, however, Section 403.1(b)(4) of the regulations states that "[t]he Uniform Construction Code does not apply to . . . [a]n agricultural building." 34 Pa.Code § 403.1(b)(4). Section 103 of the Construction Code Act defines an "agricultural building" as follows:

"Agricultural building." A structure utilized to store farm implements, hay, feed, grain or other agricultural or horticultural products or to house poultry,

---

**3.** Where the trial court takes no additional evidence, this Court's review of an appeal from a local government agency's adjudication is limited to determining whether there was a violation of constitutional rights; an error of law; or the agency's findings of fact necessary to support its adjudication are not supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b).

**4.** The Millers also argue that the proceedings before the Board were a sham because the Board, which was the fact finder of last resort, was holding its first hearing ever and was appointed by the municipality that was prosecuting the stop work order. We need not reach this argument because we reverse on the merits of the case. However, the Millers' argument lacks merit. The Board complied with all applicable state laws, rules and regulations in conducting the hearing, and there is no evidence in the record showing otherwise.

**5.** Section 403.42(a) provides that

*[a]n owner* or authorized agent *who intends to construct,* enlarge, alter, repair, move, demolish or change the occupancy of *a commercial building, structure and facility* or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical, or plumbing system regulated by the Uniform Construction Code *shall first apply to the building code official and obtain the required permit under § 403.42a* (relating to permit application). 34 Pa.Code § 403.42(a) (emphasis added).

livestock or other farm animals, a milk house and a structure used to grow mushrooms. The term includes a carriage house owned and used by members of a recognized religious sect for the purposes of housing horses and storing buggies. *The term shall not* include habitable space or spaces in which agricultural products are processed, treated or packaged and shall not *be construed to mean a place of occupancy by the general public.*

35 P.S. § 7210.103 (emphasis added). The terms "livestock" and "farm animals" are not defined in the Construction Code Act or the Uniform Construction Code.

This Court addressed a similar dispute over the necessity of a building permit in *Samsel v. Uniform Construction Code Board of Appeals of Jefferson Township,* 10 A.3d 412 (Pa.Cmwlth.2010). Samsel, the sole shareholder of Thoroughbred Racing Stables, LLC, was ordered to stop construction of a barn for housing horses and related supplies. This Court held that because the proposed barn was an "agricultural building," Samsel was exempt from obtaining a building permit. In doing so, this Court held that horses, regardless of what they will be used for, constitute "livestock" for purposes of Section 103 of the Construction Code Act. *Samsel,* 10 A.3d at 415. We further held that the proposed barn would not be a "place of occupancy by the general public" because only Samsel's business invitees, *e.g.,* customers, trainers, and veterinarians, would have access to the barn. *Id.* at 416.

The Millers' proposed barn is similar to Samsel's. The Millers' barn will be used to house horses and store hay and farm implements necessary for the operation of Rainbow Ridge Farm. Access will be restricted by gates, fences, and a locked keypad, and only individuals who have a contractual relationship with Rainbow Ridge Farm will have access to the barn. The Millers will not be hosting public events in the barn, and the Township offered no evidence that the barn will be accessible to the general public.

The Township describes the barn as an "arena" because it will contain a riding ring. The Township argues that the riding ring can be used for horse shows with spectators, and this makes the barn a commercial building and not an agricultural one. However, there is no evidence to support the Township's assumptions. The purpose of the ring is not to host spectator shows but rather, as the Millers explained, to provide a place to exercise the horses during inclement weather. The Millers further explained that there will be no seating for spectators in their proposed barn, nor will there be sufficient space to construct spectator stands.

■ Finally, the trial court erred in holding that the mere presence of a member of the public in the proposed barn automatically renders it a "commercial building," subject to the Uniform Construction Code's building permit requirement. This Court held in *Samsel* that "a building can be both agricultural and commercial; the terms are not mutually exclusive." *Samsel,* 10 A.3d at 415 n. 5. Our reasoning applies with equal force in the instant case. Just because the Millers' barn will be available to invited members of the public does not render it "a place of occupancy by the general public." 35 P.S. § 7210.103. The barn will not be the equivalent of a zoo, sports stadium or grocery store, which the public can freely access. The only individuals with access to the barn will be employees of Rainbow Ridge Farm; those who have contracted with Rainbow Ridge Farm; and their guests. Gates and locks will restrict all others from accessing the barn, and it will be no

more open to the public than is a private residence.

For these reasons, we reverse the trial court's order.

## *ORDER*

AND NOW, this 9th day of December, 2013, the order of the Court of Common Pleas of Bucks County dated January 31, 2013, in the above-captioned matter, is hereby REVERSED.