J-A32018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLIFFORD NULL | |
| Appellant | No. 2054 WDA 2014 |

Appeal from the Order November 18, 2014
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-SA-0000015-2014

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 30, 2015**

Clifford Null appeals from the order entered on November 18, 2014, in the Court of Common Pleas of Jefferson County.  Following a summary appeal, the trial judge conducted a *de novo* hearing, found Null guilty of two summary offenses under the Pennsylvania Construction Code Act (Act),[1] and ordered him to pay an aggregate fine of $267,268.00.[2, 3]  Null contends (1)

---

[1] *See* 35 P.S. §§ 7210.101–7210.1103.

[2] *See* 35 P.S. § 7210.903 ("Penalties").

[3] We note this case involves a local government criminal matter arising under an ordinance, specifically, an ordinance of McCalmont Township adopting the Pennsylvania Construction Code Act, 35 P.S. § 7210.101 *et seq.*  As such, this appeal properly comes within the jurisdiction of the Commonwealth Court. *See* 42 Pa.C.S. § 762(a)(4)(i). The Commonwealth, however, has not objected to our jurisdiction.

*(Footnote Continued Next Page)*

the fine for the summary offenses is unconstitutional as the fine is grossly disproportional to the gravity of the offenses; (2) the trial court erred in refusing to allow him to present his defenses by relying on the doctrine of exhaustion of administrative remedies; (3) the fine violated due process because the private criminal complaints did not adequately appraise Null of the charges against him; and (4) the conviction was tainted by open religious discrimination by the building inspector and the court's failure to adhere to Pa.R.Crim.P. 462. **See** Null's Brief at 8. Based upon the following, we vacate the court's order and remand this matter to the court to consider whether the fine is excessive, to decide whether additional evidence is necessary, and to enter a new order.

This case arises from new construction performed by Null at his property. On April 29, 2013, Rodney Smay, a building inspector for McCalmont Township, employed by Bureau Veritas,[4] visited Null's property and posted a stop work order on the door of the porch because "there was

*(Footnote Continued)* —————————————

In a similar situation, this Court explained: "[B]ecause appellee failed to object to this court's lack of jurisdiction, our jurisdiction has perfected, and it is within our discretion to decide the case on its merits. **Township of Eldred v. County of Monroe**, 330 Pa.Super. 74, 478 A.2d 1357 (1984); Pa.R.A.P. 741(a). In order to best serve the interests of judicial economy, we will resolve the present matter in this forum." **Commonwealth v. Joki**, 479 A.2d 616, 616 n.1 (Pa. Super. 1984). Therefore, we proceed with this appeal.

[4] Bureau Veritas is the building code enforcer for McCalmont Township, Jefferson County. **See** N.T., 11/17/2014, at 4.

work going on at the porch" without a permit. N.T., 11/17/2014, at 5. **See also id.** at 6. On June 11, 2013, Smay sent Null a letter stating that "On April 29, 2013 Bureau Veritas put a Stop Work Order on your addition. On that very same date … you said you were going to get the proper permits. It has been over 40 days." Letter, 6/11/2013; Commonwealth Exhibit 2. Smay advised Null to get a permit by June 28, 2013, or face fines. **See id.**

In August, 2013, Null obtained Township approval to construct a 30' x 32' detached garage, and also a second floor addition and porch. N.T., 11/17/2014, at 12. Township approval was the first step in the permit process. **Id.** Null did not need a permit for a detached garage under 1,000 square feet. **Id.** at 13.

On September 16, 2013, Smay sent Null a letter, stating that on April 29, 2013, a stop work order had been posted on his addition, that Null had still not submitted the proper paper work for a permit, and that he had until September 24, 2013, to comply or "Section 7210.903 of UCCS 35 P.S. will be enforced." Letter, 9/16/2013; Commonwealth Exhibit 6. **See also** N.T., 11/17/2014, at 19.

On November 14, 2013, Null obtained a permit for a second floor addition and porch. N.T., 11/17/2014, at 14. However, the check for the permit was later returned to the Township for insufficient funds. **Id.** at 23, 29.

On November 22, 2013, Smay visited the property and found Null was actually proceeding to build an attached garage greater than 1,000 square

feet — which required a permit that Null had not obtained. *Id.* at 13, 15. He also discovered Null was using rough cut lumber — not graded lumber — on the garage and addition. Smay advised Null that using rough cut lumber was a code violation and that he had to use graded lumber. *Id.* at 14–15, 18. Because Null was building an attached garage in excess of 1,000 square feet without a permit, Smay posted a second stop work order.[5] *Id.* at 15–18.

Smay visited the property again on November 25, 2013, and found Null was continuing construction, using rough cut lumber on the front porch and still working on the garage. *Id.* at 18. Smay would have posted a third stop work order, but was told to leave the property. *Id.* at 22. On November 25, 2013, Null faxed Smay a religious exemption affidavit.[6] *Id.* at 27; *see also* Commonwealth Exhibit 10. On November 26, 2013, Null submitted an agricultural building affidavit.[7] *Id.* at 27; *see also* Commonwealth Exhibit 11.

Thereafter, Smay mailed Null two letters by certified and registered mail, dated December 2, 2013, ordering him to stop work on the projects

_____

[5] The second stop work order should have been dated November 22, 2013, but was incorrectly dated November 21, 2013. *See* N.T., 11/17/2013, at 16.

[6] *See* 35 P.S. § 7210.901(b).

[7] *See* 35 P.S. §§ 7210.104(b)(4) and 7210.103.

until he obtained the proper permits or exemptions. *Id.* at 20–23. In one letter, Smay explained: "The attached garage did not have the proper permits Per Section 403.62 of Act 45." Letter, December 2, 2013; Commonwealth Exhibit 7. In the other letter, Smay advised Null that "According to the 2009 IRC Section 502 & 602, Act 45 you cannot use rough cut lumber. You must Stop Work on Permit #JCB 347-13 Per Section 403.81 of Act 45 until this matter gets resolved." Letter, December 2, 2013; Commonwealth Exhibit 8.

On January 6, 2014, Smay notified Null that his check for the permit had been returned for insufficient funds and "Per Section 403.62 of Act 45 you do not have a valid permit." Letter, 1/6/2014; Commonwealth Exhibit 12. Null repaid for the permit in January. N.T., 11/17/2014, at 23. The stop work orders were never lifted. N.T., 11/17/2014, at 28.

On January 16, 2014, Smay filed two private criminal complaints against Null, which were approved by the magisterial district judge on January 20, 2014.[8] In the magisterial district court, Null was adjudged

_____

[8] At Docket No. NT-18-14, the private complaint stated, in part:

> Under Section 7210.101 to 7210.1103 of PA Construction Code 35 P.S. 7210 PA Act 45 Section 403.81.

> On November 22nd 2013 Bureau Veritas put a stop work on the Garage Addition Mr. Null put up without the proper permits. Mr. Null has & was notified that day & by letters. Mr. Null hasn't got the proper permits & keep[s] working on this project after the stop work order was issued!

*(Footnote Continued Next Page)*

guilty at both dockets on March 12, 2014. Thereafter, Null filed a *de novo* appeal to the trial court on April 11, 2014, and a hearing was held on November 17, 2014. At the hearing, Smay testified that Null had a permit for the second floor addition, but "to this day" there was "green lumber" that was illegal, and "to this day, without a permit," Null's garage was illegal. N.T., 11/17/2014, at 30–31.

*(Footnote Continued)* ─────────

> All of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly or in violation of 403.81 of Act 45-1999 of the 35 P.S. [§§] 7210.101 to 7210.1103.

Private Criminal Complaint, Docket No. NT-18-14, 1/20/2014.

> At Docket No. NT-19-14, the private complaint stated, in part:

>> Under Section 7210.101 to 7210.1103 of PA Construction Code 35 P.S. 7210 PA Act 45 Section 403.62.

>> On November 22nd 2013 Bureau Veritas put a stop work on the Garage Addition Mr. Null put up without the proper permits. Mr. Null has & was notified that day & by letters. Mr. Null hasn't got the proper permits & keep[s] working on this project after the stop work order was issued!

> All of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly or in violation of 403.62 of Act 45-1999 of the 35 P.S. [§§] 7210.101 to 7210.1103.

Private Criminal Complaint, Docket No. NT-19-14, 1/20/2014.

The trial court found Null guilty and imposed an escalating fine at each docket, as follows:  $1.00 per day from April 29, 2013, to June 11, 2013, for a total of $44.00; $10.00 per day from June 12, 2013, to January 6, 2014, for a total of $2,090.00; $100.00 per day from January 7, 2014, to March 12, 2014, for a total of $6,500.00; $500.00 per day from March 13, 2014, to November 17, 2014, for a total of $125,000.00; and $1,000.00 per day from November 18, 2014 (the date of the order) until Null submits a permit application.[9]  *See* Order, 11/18/2014.  Therefore, at each docket, the fine totaled $133,634.00.  The aggregate fine amounted to $267,268.00.  This appeal followed.[10]

Our review is governed by the following standard:

---

[9] The fines commenced on April 29, 2013.  The trial court explained:

> Smay actually referenced the November 22, 2013 stop work order in the citations. He had also issued a stop work order on April 29 of that year, however – a fact that the Commonwealth proved beyond a reasonable doubt.  Null did not deny being issued that first order, [] nor did he object to Smay's testimony about what had occurred prior to November 22, 2013.  The date differential does not change the facts, though.  Section 7210.903 had not changed between April 29 and November 22, and Null still knew that the citations were based on his continuing to work after receiving a stop work order.

Trial Court Opinion, 1/30/2015, at 4 n.1.

[10] Null timely complied with the order of the trial court to file a concise statement pursuant to Pa.R.A.P. 1925(b).

The appellate court's scope of review of a trial court's determination on appeal from a summary conviction is limited to determining whether there has been an error of law or whether the findings of the trial court are supported by competent evidence.

*Commonwealth v. Daugherty*, 829 A.2d 1273, 1275 n.6 (Pa. Cmwlth. 2003).

By way of background, we note this case involves the Pennsylvania Construction Code Act (Act 45 of 1999), 35 P.S. §§ 7210.101–7210.1103, and the regulations that implement Act 45 of 1999, which are known as the Uniform Construction Code and are set out in the Pennsylvania Code.[11] As the Pennsylvania Commonwealth Court has explained:

In 1999, the Pennsylvania General Assembly enacted the "Pennsylvania Construction Code Act" (Act), Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210-101 - 7210-1103, to establish uniform and modern construction standards throughout the Commonwealth. *See* Section 102 of the Act, 35 P.S. § 7210.102; *Modular Building Systems Association v. Department of Labor and Industry*, 858 A.2d 686, 688 (Pa. Cmwlth. 2004). The Act authorized the Department of Labor and Industry (Department) to promulgate regulations, and the Department did so on April 12, 2002, and January 9, 2004. These regulations are known as the Uniform Construction Code. *See* Title 34 of the Pennsylvania Code, Chapters 401, 403 and 405. The Act required municipalities to adopt the Uniform Construction Code as their municipal building code within 90 days of the publication of the Uniform Construction Code in the Pennsylvania Bulletin. *See* Section 501(a) of the Act, 35 P.S. § 7210.501(a). Further, the Act provides that the Uniform Construction Code preempts any construction standards established in local ordinances that are different from those in

---

[11] 34 Pa. Code §§ 401, 403 and 405.

the Uniform Construction Code. Section 104(d) of the Act, 35 P.S. § 7210.104(d).

*Flanders v. Ford City Borough*, 986 A.2d 964, 969–970 (Pa. Cmwlth. 2009).

As stated in *Flanders*, "Chapter 403 of Title 34 of the Pennsylvania Code governs the administration and enforcement of the Uniform Construction Code." *Id.* at 970. With regard to the present case, Section 403.62 provides that one who seeks to construct or enlarge a residential building "shall first apply to the building code official and obtain the required permit under § 403.62a (relating to permit application)." 34 Pa. Code § 403.62(a). Where a project proceeds without a building permit or in a manner inconsistent with the permit, the building code official may issue a written stop work order. *See* 34 Pa. Code § 403.81(a). A person who fails to obey the stop work order may be prosecuted for a summary offense under Section 903 of the Act or made the subject of an enforcement action in a court of law. *See* 34 Pa. Code § 403.81(c); *see also* 35 P.S. § 7210.903.

Specifically, Section 403.81 of the Uniform Construction Code provides:

**§ 403.81. Stop work order.**

(a) A building code official may issue a written stop work order when the official determines that construction violates the Uniform Construction Code or is being performed in a dangerous or unsafe manner. The stop work order is to contain the reasons for the order and list the required conditions for construction to resume.

(b) The building code official shall serve the stop work order on the permit owner or the owner's agent by certified mail or personal service.

(c) A person who continues construction after service of a stop work order, except for construction work that is necessary to remove a violation or an unsafe condition, may be subject to the penalties under section 903 of the act (35 P. S. § 7210.903). A building code official may seek enforcement of a stop work order in a court of competent jurisdiction.

34 Pa. Code § 403.81. Section 7210.903, referenced in Section 403.81(c), states, in relevant part:

**§ 7210.903. Penalties**

**(a) Violation of act.—**

(1) Any individual, firm or corporation that violates any provision of this act commits a summary offense and shall, upon conviction, be sentenced to pay a fine of not more than $ 1,000 and costs.

(2) Each day that a violation of this act continues shall be considered a separate violation.

35 P.S. § 7210.903(a). With this background in mind, we turn to the arguments raised in this appeal.

Null first contends that "the imposition of a $267,[268].00 fine for a summary offense is unconstitutional as the fine is grossly disproportional to the gravity of the offense." Null's Brief at 14. Null argues, "In determining whether a fine is excessive one must look to the severity of the triggering conduct and the fines imposable for other crimes in Pennsylvania." *Id.* at 14 (footnote omitted).

In support of his argument, Null cites **Commonwealth v. Eisenberg**, 98 A.3d 1268 (Pa. 2014), and **Commonwealth v. Heggenstaller**, 699 A.2d 767 (Pa. Super. 1997). In **Eisenberg**, the Pennsylvania Supreme Court held that a mandatory minimum fine of $75,000.00 imposed by the Pennsylvania Gaming Act for a conviction of a first-degree misdemeanor theft of $200.00 was an excessive fine in violation of Article I, Section 13 of the Pennsylvania Constitution. In **Heggenstaller**, this Court held that imposition of a fine in excess of $6,000.00 for failure to pay $28.75 for 911 fees in violation of a Centre County ordinance was excessive.

In response to Null's argument, the Commonwealth counters that the **Eisenberg** Court expressly distinguished cases similar to the present case where the fine is "'tailored, scaled, and in the strictest sense, calculated to their offenses.'" Commonwealth's Brief at 12, *citing* **Eisenberg**, **supra**, 98 A.3d at 1287. The Commonwealth quotes **Eisenberg**:

> In [**Commonwealth v.**] **Church**, [522 A.2d 30 (Pa. 1987),] overweight vehicles were fined on a sliding scale per pound over the weight limit. In **Eckhart** [**v. Department of Agriculture**, 8 A.3d 401 (Pa. Cmwlth. 2010)], the appellant kennel operator had committed numerous infractions incurring a fine amount in excess of $150,000 based on a $100-$500 per dog/per day penalty scheme, $15,000 of which appellant claimed was excessive in light of perceived triviality of the offense. In [**Commonwealth v.**] **CSX** [**Transportation, Inc.**, 653 A.2d 1327 (Pa. Cmwlth. 1995),] the appellant's train car leaked enough corn syrup into the Youghiogheny River to kill approximately 10,000 fish, and thus appellant incurred a roughly $100,000 fine, based on a $10 per fish calculation.

Commonwealth's Brief at 12, citing **Eisenberg, supra**, 98 A.3d at 1287 n.24. The Commonwealth argues, "The fines imposed in **Church**, **Eckhart** and **CSX** are similar to the one imposed in this case." Commonwealth's Brief at 12.

The Pennsylvania Constitution provides that, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. art. 1, § 13. In **Eisenberg**, the Pennsylvania Supreme Court opined that the Pennsylvania Constitution's prohibition against excessive fines requires the fine to be "reasonably proportionate to the crimes which occasion them." **Eisenberg, supra**, 98 A.3d at 1287. In **Heggenstaller**, the Pennsylvania Commonwealth Court explained that "the cumulative nature of the fine is in keeping with the terms of the ordinance but when an ordinance is written so as to have a punitive and/or confiscatory effect, without relation to the individual's ability to pay and the severity of the violation, it does not meet the standard required by the constitution." **Heggenstaller**, 699 A.2d at 769. "A fine should be sufficient enough to discourage the conduct, but not so excessive as to be punitive in nature." **Id.** Therefore, in sentencing for a summary offense,

> the trial court should weigh all mitigating and aggravating factors and arrive at an appropriate sentence that is consistent with the protection of the public and the gravity of the offense. Considerations should include the history and character of the defendant, the nature and circumstances of the crime . . . and the defendant's attitude, including a lack of contrition for his criminal conduct. Finally, if a sentence is imposed within the statutory limits, there is no abuse of discretion unless the

sentence is manifestly excessive so as to inflict too severe a punishment.

***Borough of Kennett Square v. Lal***, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994).

In this case, the trial court told Null "you can't ignore the law,"[12] taking note of Null's attitude, but did not address whether the escalating fine of $267,268.00 was "reasonably proportionate to the crimes which occasion them." ***Eisenberg, supra***. Therefore, on this record, we are compelled to vacate the court's order and remand to the trial court for consideration of whether the fine is too severe in view of all mitigating and aggravating factors.[13]

Our resolution of Null's first issue, however, does not fully resolve this appeal. Therefore, we turn to Null's remaining issues.

In the second issue, Null contends "the trial court erred by refusing to allow [him] to present his defenses based upon an unsupported view that the doctrine of exhaustion of administrative remedies forbade [him] from raising his defenses in a criminal proceeding." Null's Brief at 20. Specifically, Null challenges the court's ruling that prevented Null from cross-

---

[12] N.T., 11/17/2013, at 54.

[13] To the extent that the court's order of November 18, 2014, imposed a fine that continued **after** the date of the hearing and the date of its order, we note that 35 P.S. § 7210.903 does not authorize an open-ended fine.

examining Smay concerning the religious exemption affidavit and the agricultural building affidavit he had submitted to Smay.

Regarding a religious exemption, Section 7201.901 provides, in relevant part:

(1)  An applicant for a construction permit for a dwelling unit … may file an application with a code administrator to be exempted from the Uniform Construction Code, as provided in this subsection, which conflicts with the applicant's religious beliefs. The application shall state the manner in which the provision conflicts with the applicant's religious beliefs and shall include an affidavit by the applicant stating ….

(2)  A code administrator shall grant an application for an exemption if made in accordance with paragraph (1).

35 P.S. § 7210.901(b)(1)-(2).

Furthermore, 35 P.S. 7210.104(b)(4) provides that agricultural buildings are excluded from the Act. The Act defines an "agricultural building" as

[a] structure utilized to store farm implements, hay, feed, grain or other agricultural or horticultural products or to house poultry, livestock or other farm animals, a milk house and a structure used to grow mushrooms, agricultural or horticultural products. The term includes a carriage house owned and used by members of a recognized religious sect for the purposes of housing horses and storing buggies. The term shall not include habitable space or spaces in which agricultural products are processed, treated or packaged and shall not be construed to mean a place of occupancy by the general public.

35 P.S. § 7210.103.

In this case, Null did not submit affidavits for a religious exemption[14] and "agricultural building"[15] until November 25, 2013, and November 26, 2013, respectively — after the issuance of two stop work orders. Furthermore, Null submitted the religious affidavit without an application.

_____

[14] Null's religious exemption affidavit, dated November 25, 2013, stated, in part:

1. I, the permit applicant, am a member of a religious sect.

2. The religious sect has established tents or teachings which conflict with an electrical, a plumbing or a lumber and wood provision of the Uniform Construction Code.

3. The permit applicant adheres to the established tenets or teachings of the sect.

Commonwealth Exhibit 10 (italics removed).

[15] Null's agricultural building affidavit, dated November 26, 2013, was on a Bureau Veritas form, in which Null attested that the agricultural building he was constructing:

1. Will be utilized to store farm implements, hay, feed, grain or other agricultural or horticultural products or to house poultry, livestock or other farm animals and a milk house. The term includes a carriage house owned and used by members of a recognized religious sect for the purposes of housing horses and storing buggies.

2. Will not be utilized as a habitable space.

3. Will not be utilized as a space in which agricultural products are processed, treated or packaged.

4. Will not be utilized as a place of occupancy by the general public.

Commonwealth Exhibit 11.

*See* 35 P.S. § 7210.901(b)(1). In response, Smay sent Null two letters, dated December 2, 2013, acknowledging receipt of the affidavits and informing Null that the stop work orders would not be lifted until certain terms were met. Null did not comply with Smay's directives or seek administrative review of the affidavits.

Based on our review, we agree with the trial court that Null's affidavits had no relevance since Null failed to pursue administrative review of Smay's decision not to accept them. As the trial court opined:

> Because Null refused to comply with the Code and apply for a permit or exemption even after Smay offered a potential resolution to their disagreement, … he alone created a situation wherein there was no formal request to grant or deny. He thus deprived himself of the opportunity to come into compliance with the Code and its effectuating ordinance either by adhering to its building requirements or satisfying Smay that he was constructing an agricultural building and that he was a member of a recognized religious sect to whom application of the Code was odious.
>
> In taking the actions he did, Null also foreclosed the possibility of appealing an adverse decision to the board of appeals. That, however, was what § 7210.501 required, stating, "A municipality which has adopted an ordinance for the administration and enforcement of this act … shall establish a board of appeals .. to hear appeals from decisions of the code administrator. *Id.* It further clarified that claims such as Null attempted to raise in his summary trial were claims meant to be addressed to the board. In that regard, subsection (c)(2) provided, "An application for appeal shall be based on a claim that the true intent of this act or regulations legally adopted under this act have been incorrectly interpreted, the provisions of this act do not fully apply or an equivalent form of construction is to be used." *Id.* Had he done what the law required, therefore, Null could have asked the Court to consider his exemption claims only after exhausting his administrative remedies. He elected to disregard that process, and the Court was not going to let him defend his

- 16 -

actions by reference to facts he was required to first present for the code administrator's consideration.

Trial Court Opinion, 1/30/2015, at 2–3.

Furthermore, we are not persuaded by the cases presented by Null in support of his argument that the court erred in applying the exhaustion of administrative remedies doctrine: *McKart v. United States*, 395 U.S. 185 (1969), *Feingold v. Bell of Pennsylvania*, 383 A.2d 791 (Pa. 1978), and *Flanders v. Ford City Borough Council*, 986 A.2d 964 (Pa. Cmwlth. 2009).

In *McKart, supra*, the United States Supreme Court held that the petitioner's failure to appeal the Selective Service Board decision that removed his exemption as "sole surviving son," and classified him as available for military service, did not foreclose judicial review of his defense to his criminal prosecution for failure to report. *Id.*, 395 U.S. at 196–197. In *McKart*, the question of whether the petitioner was entitled to an exemption as a "sole surviving son" after his mother, his only living parent, became deceased, was "solely one of statutory interpretation." *McKart*, 395 U.S. at 197–198.

In *Feingold, supra*, the Pennsylvania Supreme Court found that the plaintiff, who was seeking damages, had no adequate administrative remedy, and held he had no duty to first exhaust administrative procedures before resorting to the courts. *Id.*, 383 A.2d at 795–796. *Feingold* is readily distinguishable from this case wherein the question is whether Null's

failure to pursue an exemption denial precluded his exemption defense at trial.

Finally, in **Flanders**, the Commonwealth Court recognized that "the issuance of a stop work order is governed by 34 Pa. Code § 403.81, and it does not provide that this order can be appealed to a construction board of appeals." **Id.**, 986 A.2d at 973. Here, however, the issue concerns exemption denials for which Null could have, but did not, pursue an administrative appeal. **See** 35 P.S. § 7210.501(c) ("Board of Appeals"); 34 Pa. Code 403.62(i) (permit applicant may appeal a building code official's action on the permit application). **See generally, In re Appeal of Miller**, 81 A.3d 1087 (Pa. Cmwlth. 2013) (property owner, claiming agricultural exemption, appealed to board following issuance of stop work order); **Samsel v. Unif. Constr. Code Bd. Of Appeals of Jefferson Twp.**, 10 A.3d 412 (Pa. Cmwlth. 2010) (same).

In sum, we find no merit to the argument presented by Null. Accordingly, we reject Null's claim that the trial court erred in applying the exhaustion of administrative remedies doctrine to disallow certain cross-examination questioning of Smay regarding the religious and agricultural exemptions sought by Null.

Thirdly, Null claims that the imposition of a $267,268.00 fine for a summary offense violated his right to due process because the private criminal complaint did not appraise him of the charges against him. **See** Null's Brief at 26. Although Null presents multiple arguments in his brief in

connection with this issue, the only due process claim that Null preserved in his Rule 1925(b) statement is, as follows:

> The fine violated [Null's] basic right to due process as the private criminal complaint authorized by a Magistrate Court failed to provide notice that [Null] was facing a potential fine of a quarter of a million dollars instead of $2,000.00 authorized by the statute.

Null's Concise Statement, 1/5/2015, at 2, ¶5.

Pennsylvania Rule of Criminal Procedure 403(A) provides, in pertinent part:

> Every citation shall contain:
>
> (1)      the name and address of the organization, and badge number, if any, of the law enforcement officer;
>
> (2)      the name and address of the defendant;
>
> (3)      a notation if the defendant is under 18 years of age and whether the parents or guardians have been notified of the charge(s);
>
> (4)      the date and time when the offense is alleged to have been committed, provided however, if the day of the week is an essential element of the offense charged, such day must be specifically set forth;
>
> (5)      the place where the offense is alleged to have been committed;
>
> (6)      a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged;
>
> (7)      the date of issuance;

(8)      a notation if criminal laboratory services are requested in the case;

(9)      a verification by the law enforcement officer that the facts set forth in the citation are true and correct to the officer's personal knowledge, or information and belief, and that any false statements therein are made subject to the penalties of the Crimes Code, 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Pa.R.Crim.P. 403(A).

Review of the private criminal complaints reveals compliance with the requirements of Rule 403(A). Additionally, we note the Rule does not require notice of possible penalty. Therefore, we conclude Null's third argument warrants no relief.

Finally, Null claims "the order of conviction was tainted by the open religious discrimination by Rodney Smay and the trial court's failure to adhere to [Pennsylvania Rule of Criminal Procedure] 462."[16] Null's Brief at

_____

[16] Rule 462 provides, in relevant part:

(G) At the time of sentencing, the trial judge shall:

(1) if the defendant's sentence includes restitution, a fine, or costs, state the date on which payment is due. If the defendant is without the financial means to pay the amount in a single remittance, the trial judge may provide for installment payments and shall state the date on which each installment is due;

(2) advise the defendant of the right to appeal to the Superior Court within 30 days of the imposition of sentence, and that, if an appeal is filed, the execution of sentence will be stayed and the trial judge may set bail; ….

*(Footnote Continued Next Page)*

32.   Specifically, Null argues, "As a result of Mr. Smay's religious bias Mr. Null was treated differently than similarly situated Amish Christians who submit religious affidavits as a matter of course.   Accordingly, Mr. Null's prosecution, conviction and sentence was tainted and should be vacated." *Id.* at 33.     Null also maintains that the court's failure to comply with Rule 462 does not constitute harmless error, but rather is "symbolic of the overall lack of due process Mr. Null received in the trial court." *Id.* at 34.  We find no merit in these arguments.

As discussed above, the record reflects that Null submitted a religious exemption affidavit to Smay, and failed to seek administrative review of Smay's response that requested more information.  *See* Letter, 12/2/2013; Commonwealth Exhibit 8.[17]   Therefore, we reject Null's argument concerning Smay's religious bias.

*(Footnote Continued)* ———————————

Pa.R.Crim.P. 462(G)(1),(2).

[17] Specifically, with regard to the religious exemption affidavit, Smay advised Null:

> 4.) Bureau Veritas has received a Religious Exemption Affidavit from Mr. Null.  This seems to be a way for him to not have to follow the code and Act 45.  Bureau Veritas will honor the religious exemption that Mr. Null signed if he will show Bureau Veritas proof, as stated, through numbers 1–3 on the affidavit he signed.  Bureau Veritas will be happy to sit down with his religious sect or his religious leader to get this resolved.

If Mr. Null can prove he is part of a religious sect, Per Act 45, this will clear up the rough cut lumber issue for the garage,

*(Footnote Continued Next Page)*

- 21 -

Nor do we find merit in Null's argument that the court's failure to comply with Rule 462 constitutes reversible error. The trial court reasoned:

> [W]hile the Court admittedly neglected to inform Null of a payment due date or the possibility of installments and of his appellate rights, those omissions did not render the sentence illegal and, as the record indicates, did not prejudice him. Null was represented by counsel throughout the process, and as evidenced by the filing date on his notice of appeal, counsel was aware of the prescribed appeal period and apparently apprised his client of it, the result being that Null did in fact file his appeal within 30 days and thus was not adversely affected by the Court's error. Additionally, because the execution of sentence was stayed on account of the appeal, Null's obligation to pay was immediately suspended. Accordingly, that the Court omitted to convey his payment options on November 17, 2014 also did not prejudice him.

Trial Court Opinion, 1/30/2015, at 5. We agree with the trial court that any omissions with regard to Rule 462 were harmless error. Additionally, we find no support in the record for Null's claim of "overall lack of due process Mr. Null received in the trial court." Null's Brief at 34.

To conclude, we find merit solely in Null's first argument. Accordingly, we vacate the court's order and remand this matter to the court to consider whether the fine is excessive, to decide whether additional evidence is necessary, and to enter a new order.

Order vacated. Case remanded. Jurisdiction relinquished.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

porch and 2^(nd) story addition. If the exemption holds up, proper inspections are still required.

Letter, 12/2/2013; Commonwealth Exhibit 8.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/30/2015</u>